**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Jauregui, | No. CV-23-00729-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Daimler Truck North America LLC, *et al.*, | |
| Defendants. | |

At issue is Defendant Daimler Truck North America LLC's Motion for Summary Judgment (Doc. 86, MSJ), to which Plaintiff Sandra Jauregui filed a Response (Doc. 94, MSJ Response) and Defendant filed a Reply (Doc. 100). Each party supports its position with a statement of facts (Doc. 87; Doc. 96). Defendant, with the Court's leave, also filed a separate objection to Plaintiff's statement of facts (Doc. 101). The MSJ depends in part upon certain admissions that resulted from Plaintiff's failure to timely respond to a set of requests for admissions. Plaintiff has filed a Motion to Withdraw Admissions (Doc. 104, Mot. to Withdraw), to which Defendant has filed a Response (Doc. 105, Admissions Response) and Plaintiff has filed a Reply (Doc. 106, Admissions Reply). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants both Plaintiff's Motion to Withdraw Admissions and Defendant's Motion for Summary Judgment.

. . .

. . .

I.     **Background**

The material facts of this case are undisputed. On May 20, 2022, Jose Luis Jauregui Soto died in a tragic trucking accident on the I-17 in Phoenix, Maricopa County, Arizona. Mr. Soto was a driver for Shamrock Farms, and on the morning of May 20 he was driving north on the I-17 carrying Shamrock cargo in a 2022 Peterbilt Conventional 579 tractor-trailer designed and manufactured by Paccar, Inc. Also driving north on the I-17 on the morning of May 20 was Ramon Vizcarra, another driver for Shamrock. Mr. Vizcarra was driving a 2018 Freightliner Cascadia tractor-trailer designed and manufactured by Defendant. Both Mr. Soto and Mr. Vizcarra had departed from the same Shamrock facility, with Mr. Vizcarra a few minutes ahead of Mr. Soto.

While on the I-17, Mr. Vizcarra's truck inexplicably began to lose momentum. Although no component within the truck actually shut down, Mr. Vizcarra claims that some sort of a disconnect manifested between the engine and the wheels such that his depression of the acceleration pedal had no effect on the truck's speed, even though he could hear the engine rev as normal. There were no warning lights or other cautionary indicators, and Mr. Vizcarra did not perceive any odd sounds or other unusual indicia. His truck was simply slowing down, and he did not know why. Being apparently unable to control his vehicle's speed, Mr. Vizcarra attempted to navigate to the side of the road, but he was unable to do so before the vehicle slowed to a stop. Thus, Mr. Vizcarra found himself at a complete standstill in the number two traffic lane of an active interstate highway. Shortly thereafter, Mr. Soto crashed into Mr. Vizcarra's stalled truck. He died in the collision.

Immediately following the accident, a Shamrock driver restarted Mr. Vizcarra's truck and was able to drive it without any issues. Several other individuals, including Shamrock mechanics and third-party technicians, also examined the truck and found nothing amiss. Nothing in the truck's service history provides any indication of what occurred, and there have been no reports of analogous incidents from other drivers of other trucks. Mr. Vizcarra's truck was returned to service without the need for repairs. Since the accident, the truck has been driven approximately 80,000 miles, and there have been no

anomalous issues of the kind reported by Mr. Vizcarra. Prior to the incident, the truck had been driven approximately 121,000 miles, also without any issue resembling that described by Mr. Vizcarra. In short, nobody has a clear idea of why Mr. Vizcarra's truck lost motive power on the morning of May 20.

Plaintiff is Mr. Soto's widow. She initiated this diversity action on her own behalf and on behalf of Mr. Soto's other statutory beneficiaries, including his parents and his five children. Plaintiff has brought claims against Defendant and Paccar, who designed and manufactured Mr. Vizcarra's and Mr. Soto's vehicles, respectively, as well as Bendix Commercial Vehicle Systems LLC, the designer and manufacturer of a collision avoidance and mitigation system installed on Mr. Soto's truck. The instant MSJ concerns only the claims against Defendant, which arise out of its design and manufacture of Mr. Vizcarra's Freightliner truck. The claims against Paccar and Bendix are not at issue here. Plaintiff asserts claims against Defendant for strict products liability, negligence, and wrongful death. Although Plaintiff initially sought punitive damages, she later stipulated to strike that prayer for relief. (Doc. 26.)

On August 24, 2023, the Court issued a Rule 16 scheduling order. (Doc. 37.) Pursuant to that order, fact discovery closed on May 20, 2024. Approximately six weeks prior to the close of fact discovery, on April 4, 2024, Defendant propounded fifteen requests for admissions. Under Federal Rule of Civil Procedure 36(a)(3), Plaintiff had thirty days to respond. Plaintiff failed to timely respond. On June 11, 2024, well over a month after the deadline to respond had passed, Defendant notified Plaintiff that the requests for admissions were still outstanding. Plaintiff served a response to the requests the next day. Under Rule 36(a)(3), a matter is admitted if not denied or objected to, but the Court may permit a party to withdraw or amend an admission under Rule 36(b) "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Plaintiff has filed a Motion to Withdraw Admissions. Because Defendant's MSJ rests in part upon the admissions resulting from Plaintiff's failure to timely respond to Defendant's

requests, the Court must resolve the Motion to Withdraw Admissions before turning to the merits of the MSJ.

## II.      Motion to Withdraw Admissions

Under Rule 36(a)(3), a non-response to a request for admission is a deemed admission. Deemed admissions are "conclusively established" unless the Court permits withdrawal or amendment of the admissions. Fed. R. Civ. P. 36(b). District courts possess discretion to allow withdrawal if two elements are met: (1) the withdrawal must "promote the presentation of the merits of the action" and (2) the withdrawal must not "prejudice the requesting party in maintaining or defending the action on the merits." *Id.* The withdrawing party bears the burden of showing that withdrawal promotes adjudication on the merits, but the requesting party bears the burden of persuading the court that prejudice exists. *See Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). If both elements of Rule 36(b) are satisfied, a district court may permit withdrawal or amendment, but it is not required to do so.

Plaintiff argues that the criteria of Rule 36(b) are satisfied here and that the Court should therefore exercise its discretion to allow withdrawal of her deemed admissions.[1] Defendant contends (1) that the elements are not met and (2) that the Court should discretionarily deny withdrawal in any event. The Court will address those arguments in turn. However, Defendant also presents a preliminary argument that Plaintiff's Motion is procedurally improper and should therefore be denied summarily. (Admissions Response at 2.) Defendant frames Plaintiff's Motion as a "discovery motion." As set forth in the Rule 16 scheduling order, the Court prohibits the filing of discovery motions and instead requires compliance with an alternative procedure for the resolution of discovery disputes. (Doc. 37 at 3.) Moreover, "[t]he Court will not entertain discovery disputes after the close of discovery absent truly extraordinary circumstances." (Doc. 37 at 3.) Plaintiff did not

---

[1] Plaintiff also argues that the requests for admission were improper because they addressed ultimate legal conclusions rather than facts. (MSJ Response at 8–9.) Thus, even absent withdrawal, Plaintiff contends that her deemed admissions should be disregarded. Because the withdrawal analysis is dispositive, the Court does not reach this argument.

comply with the Court's discovery procedure because she does not view her Motion to Withdraw as a discovery motion. (Admissions Reply at 2.)

Defendant's procedural argument is devoid of merit and smacks of gamesmanship. As Defendant itself points out, fact discovery has already closed. Although Plaintiff's failure to issue a timely response occurred before the close of fact discovery, Defendant did not notify her of her dereliction until after fact discovery had closed. Thus, under Defendant's theory, if a party requests admissions shortly before the close of discovery, and the other party fails to respond, then that party is procedurally barred from even attempting to rectify its failure, never mind the existence of a provision in the Federal Rules of Civil Procedure expressly permitting just such an attempt at rectification. To the extent that Defendant reads the Court's scheduling order as a viatiation of Rule 36(b), the Court clarifies hereby that its scheduling order has no such effect. The Court is also unconvinced by Defendant's framing of Plaintiff's Motion as a "discovery motion." Defendant chose to file a dispositive motion relying in large part on the deemed admissions. Given that Defendant is seeking to use the deemed admissions to completely dispose of Plaintiff's claims, Plaintiff's Motion hardly reflects a garden-variety discovery dispute. Defendant is attempting to use a Kafkaesque interpretation of the Court's scheduling order to preclude any analysis on the merits. That runs contrary to the purpose of Rule 36 and of the litigation process in general. Litigation is not a game, and this sort of gamesmanship is unbecoming of Defendant's counsel. The Court will not deny Plaintiff's Motion as an improper discovery motion and will instead assess it according to the Rule 36(b) framework.

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon*, 474 F.3d at 622 (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). Many of the deemed admissions are completely dispositive of Plaintiff's claims. For instance, the third, fifth, twelfth, thirteenth, fourteenth, and fifteenth admissions are, respectively: "[t]here was no defect in [Mr. Vizcarra's truck] that caused the [collision] to occur"; "[t]he [truck] was not stopped on the roadway because of a defect that existed at the time it left the control of

[Defendant]"; "[t]he [truck] was not defective in design"; "[t]he [truck] did not have any manufacturing defects that caused the damages claimed in this action"; "[t]he design of the [truck] was not the cause of the [collision]"; and "[t]here was no defect in the manufacture of the [truck] that caused the [collision] to occur." (MSJ at 4.) These admissions go to the very core of Plaintiff's claims. Defendant's arguments to the contrary are (1) that Plaintiff will ultimately lose anyway due to a lack of evidence showing a defect and (2) that some of the fifteen admissions were later proven true by other evidence, such as the fact that Shamrock did not undertake any repairs on Mr. Vizcarra's truck before returning it to service. (Admissions Response at 3–5.) The former argument is entirely irrelevant, and the latter argument reveals a fundamental misunderstanding of the function of a request for admission. Even if the Court grants Plaintiff's Motion and permits her to replace her prior non-response with her subsequent denial of all fifteen requests for admissions, those denials will be of no moment if the denied subject matter is later proven by other means. Indeed, the deemed admissions are *only* relevant insofar as they remain unproven by other evidence. Therefore, the Court's disposition of Plaintiff's Motion will have no effect on the adjudication of the facts surrounding the repairs to Mr. Vizcarra's truck.

The second element of the Rule 36(b) test is also met here. In order to show prejudice, Defendant must demonstrate that it faces an undue difficulty in proving the deemed admissions by other means, such as the unavailability of a key witness or the sudden need to obtain additional evidence. *Conlon*, 474 F.3d at 622. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth." *Id.* (internal quotation mark omitted) (quoting *Hadley*, 45 F.3d at 1348). Moreover, the analysis "focus[es] on the prejudice that the nonmoving party would suffer *at trial*." *Id.* at 623–24. "[R]eliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." *Id.* at 624. Defendant fails to carry its burden here. Defendant argues that it will be prejudiced because it will be unable to conduct additional discovery, unable to file a second motion for summary judgment incorporating that new discovery, and may incur additional expense

should it have to file a second motion for summary judgment. (Admissions Response at 5–7.) These arguments are unavailing. As the Ninth Circuit has expressly recognized, a district court may reopen discovery after granting a Rule 36(b) motion to withdraw admissions. *Conlon*, 474 F.3d at 624. The same is true of permitting a second motion for summary judgment. And the Court could engage in partial fee-shifting if Defendant were to actually file such a motion. As the Ninth Circuit has made abundantly clear, "prejudice must relate to the difficulty a party may face in proving its case *at trial*." *Id.* (emphasis added). Defendant's disregard for this unequivocal holding is concerning.

Defendant next argues that, even if the Rule 36(b) test is satisfied, the Court should nevertheless exercise its discretion to deny Plaintiff's Motion. The Court disagrees. Plaintiff clearly acted with good faith. Although she blew the initial deadline, she served a response only one day after Defendant notified her of the ongoing pendency of its requests. "Good cause to avoid dismissal may be demonstrated by establishing, at minimum, excusable neglect." *Lemoge v. United States*, 587 F.3d 1188, 1198 n.3 (9th Cir. 2009). Although Plaintiff's admissions would not result in dismissal *per se*, they would result in the practical equivalent of dismissal, given that the admissions go to the existence of a product defect in a products liability case. Therefore, the Court concludes that good cause exists to permit withdrawal. Both of the Rule 36(b) factors overwhelmingly favor withdrawal, and "[a]lthough the rule itself is permissive, the Advisory Committee clearly intended the two factors set forth in Rule 36(b) to be central to the analysis." *Conlon*, 474 F.3d at 625. The Court perceives no need to consider any additional "other matters." *See id.* Defendant's contention that Plaintiff waited impermissibly long to file her Motion is without merit, as Plaintiff apparently did not know that Defendant would refuse to credit her late responses until Defendant filed its MSJ. Plaintiff raised the substance of this Motion in her Response (MSJ Response at 9), which Plaintiff timely filed after the Court granted an extension of time. (Doc. 92). In the absence of any compelling reason to deny Plaintiff's Motion to Withdraw Admissions, the Court grants it.[2] The Court will disregard

---

[2] Defendant has requested that the Court issue it an award of fees even in the event that Plaintiff prevails on the Motion. (Admissions Response at 14.) Other than vague

1   the deemed admissions in its consideration of Defendant's MSJ, and Plaintiff's late-served

2   response shall constitute the controlling response to the relevant requests for admissions.

3   **III.    Motion for Summary Judgment**

4        **A.    Legal Standard**

5        Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate

6   when the movant shows that there is no genuine dispute as to any material fact and that the

7   movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

8   *Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the

9   outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could

10  resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA,*

11  *LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

12  242, 248 (1986)). The court must view the evidence in the light most favorable to the

13  nonmoving party and draw all reasonable inferences in the nonmoving party's favor.

14  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

15       The moving party "bears the initial responsibility of informing the district court of

16  the basis for its motion, and identifying those portions of [the record] . . . which it believes

17  demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232.

18  When the moving party does not bear the ultimate burden of proof, it "must either produce

19  evidence negating an essential element of the nonmoving party's claim or defense or show

20  that the nonmoving party does not have enough evidence of an essential element to carry

---

statements of sweeping scope, Defendant has not explained why it is entitled to an award of fees. As Defendant itself concedes, many of the deemed admissions have already been proven by other evidence. And the deemed admissions that have not been proven by other evidence relate to the literal elements of Plaintiff's claims, which have of course informed the scope of all discovery in this case. As far as the Court can tell, the only expenses incurred by Defendant in connection with Plaintiff's Motion are the fees charged by Defendant's counsel for their unduly obstinate objection to the Motion. The arguments presented by Defendant's counsel in resisting the Motion have been largely meritless. Moreover, the position advocated by Defendant's counsel mirrors, almost exactly, a position that the same *pro hac vice* counsel representing the same client advanced in a sister court last year. *See Snelson v. Daimler Trucks N. Am. LLC*, No. 22-CV-551-BAS-DDL, 2023 WL 3186293 (S.D. Cal. May 1, 2023). It's one thing to play hardball, but it's another thing to play the precise form of hardball already rejected by a district court in this Circuit. The Court will not issue either party an award of fees here, but if it were inclined to issue an award, Plaintiff would be the likely recipient, as it appears that Defendant's tactics regarding Plaintiff's Motion border upon bad faith.

1   its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,

2   210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of

3   production, the nonmoving party must produce evidence to support its claim or defense.

4   *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on

6   which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

7        In considering a motion for summary judgment, the court must regard as true the

8   non-moving party's evidence, as long as it is supported by affidavits or other evidentiary

9   material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest

10  on its pleadings; it must produce some significant probative evidence tending to contradict

11  the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

12  (holding that the plaintiff must present affirmative evidence in order to defeat a properly

13  supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045

14  (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on

15  conclusory allegations unsupported by factual data." (citation omitted)).

16      **B.      Analysis**

17          **1.      Strict Liability**

18      "Although the doctrine of strict liability in tort imposes liability without proof of

19  negligence, the law does not impose liability for every injury caused by a product. Liability

20  exists only if the product was in a 'defective condition unreasonably dangerous.'" *Dart v.*

21  *Wiebe Mfg., Inc.*, 147 Ariz. 242, 244 (1985) (quoting Restatement (Second) of Torts §

22  402A (1965)). In order to establish a *prima facie* case of strict product liability, Plaintiff

23  must demonstrate "that the product was in a defective condition that made it unreasonably

24  dangerous, that the defective condition existed when the product left the defendant's

25  control, and that the defective condition proximately caused the plaintiff's injuries." *Dillon*

26  *v. Zeneca Corp.*, 202 Ariz. 167, 172 ¶ 14 (Ct. App. 2002). A product may be unreasonably

27  dangerous via one of three ways: "a manufacturing defect, a design defect, or an

28  informational defect encompassing its instructions and warnings." *Id.* Here, Plaintiff

alleges both a manufacturing defect and a design defect, but not an informational defect. (*See* Doc. 1 at 10.) Although manufacturing defects and design defects are often analyzed according to two different tests, Defendant's MSJ does not meaningfully engage with the nuances of either test.[3] Instead, the MSJ rests upon the more elementary proposition that Plaintiff has not adduced sufficient evidence to demonstrate the existence of any kind of a defect, whether a manufacturing defect or a design defect.

Defendant does not dispute Mr. Vizcarra's testimony that his truck inexplicably lost power. (MSJ at 7.) Rather, Defendant argues that the mere fact of the vehicle allegedly slowing down does not establish that it slowed down due to a defect in the truck's design or manufacture, particularly given that it had already been on the road for 121,000 miles prior to the incident. (MSJ at 7–10.) Defendant is correct that Plaintiff does not identify any specific defect with respect to Mr. Vizcarra's truck. Plaintiff merely points to the fact

[3] The two tests that Arizona courts utilize to assess whether a manufacturing or design defect exists are the consumer expectation test and the risk/benefit test. *See Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 581 ¶ 13 (Ct. App. 2003). The main difference between the two tests is the relative role played by consumer expectations, which tend to be more well-formed in manufacturing defect cases, in which consumers frequently have experience using non-defective versions of the same product, than in design defect cases, in which consumers often lack an understanding of how safe the product could have been under alternative designs. *Id.* ¶¶ 14–15. Although there are occasionally design defect cases involving products that are so common that consumer expectations exist regarding the product's design, *see, e.g.*, *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 199–200 ¶¶ 25–28 (Ct. App. 2009), in most design defect cases the risk/benefit test is the appropriate standard, *see Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 536 (Ct. App. 1986).
Defendant contends that the consumer expectation test is inapplicable to Plaintiff's design defect claim because Mr. Soto was a bystander. (MSJ at 8–9.) This argument is both insignificant and meritless. First, neither party grapples with the substance of either test, so it is unclear why it matters which test the Court employs, at least insofar as the instant Order is concerned. Second, the Court already held that the consumer expectation test is applicable to Plaintiff's design defect claim. (Doc. 35 at 9.) The Court recognized that Arizona law is not clear on whether a bystander can invoke the consumer expectation test for a design defect claim, but after canvassing the caselaw, the Court concluded that Arizona law permits a bystander to utilize the consumer expectation test in instances where, as here, the allegedly defective product was being used by a non-bystander and was subject to an ordinary expectation of safety. In so holding, the Court referred extensively to *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 155 Ariz. 239, (Ct. App. 1987). (Doc. 35 at 7–9.) Because the Court's analysis involved a close call at the dismissal stage, the Court would have been amenable to a possible reconsideration of this esoteric point of law at the summary judgment stage. Defendant, however, merely repeats the same argument that the Court already disposed of on the merits. Citing exclusively to *Gomulka*, Defendant contends that Mr. Soto "is a bystander—not a user. Therefore, the consumer expectation theory is inapplicable." (MSJ at 9.) In the absence of any reason to revisit its prior holding, the Court reiterates that the consumer expectation test applies to Plaintiff's design defect claim, as well as to her manufacturing defect claim.

that the truck lost power and claims that that occurrence alone permits the "inference" that the truck was affected by a manufacturing or design defect. (*See* MSJ Response at 14–15.) Thus, Plaintiff attempts to prove her strict liability claim using circumstantial evidence.

Plaintiff's evidence is insufficient to withstand Defendant's MSJ. Circumstantial evidence of a product defect is less probative when the product is older and has a history of extensive usage. For instance, in both of the two cases relied upon by Plaintiff for the validity of circumstantial evidence in the product defect context, the product at issue had a very limited usage history. *See Dietz v. Waller*, 141 Ariz. 107, 111 (1984) (examining a boat that "had seen only approximately ten hours of use"); *Mineer v. Atlas Tire Co.*, 167 Ariz. 315, 316 (Ct. App. 1990) (examining a tire that was "brand new"). Although the specific facts and circumstances of a case may permit a plaintiff to use circumstantial evidence to prove the existence of a defect in an older product, *see Allstate Ins. Co. v. Ford Motor Co.*, No. CV-08-2276-PHX-NVW, 2010 WL 1654145, at *18 (D. Ariz. Apr. 21, 2010), Plaintiff has not pointed to anything unique about this case that might permit a fact-finder to infer that a product defect existed at time of manufacture/design solely by virtue of the fact that Mr. Vizcarra's truck lost power after 121,000 miles of driving. The Court views this case as more similar to *Lockhart v. Techtronic Indus. N. Am. Inc.*, No. CV-20-00938-PHX-JJT, 2023 WL 3440441 (D. Ariz. May 12, 2023), *aff'd*, No. 23-15872, 2024 WL 1427014 (9th Cir. Apr. 3, 2024). In *Lockhart*, the Court held that "[b]ecause Plaintiff has provided no evidence from which a reasonable jury could conclude that, considering the years and conditions of its prior use, the leaf blower's fan guard failed as a result of a manufacturing defect, Defendants are entitled to summary judgment on Plaintiff's manufacturing defect claims." *Id.* at *6. Here, because Mr. Vizcarra's truck was driven 121,000 miles prior to the accident and 80,000 miles following the accident, all without incident, the mere fact of the alleged slowing does not permit a reasonable inference that the truck was defectively manufactured or designed. Plaintiff's circumstantial evidence lacks probative value. And because Plaintiff has not pointed to a distinct design flaw or

1    meaningfully addressed the risk/benefit test, the same conclusion applies to the design

2    defect claim.

3    　　　　Even if Plaintiff's circumstantial evidence could support an inference of strict

4    liability in this case, Plaintiff would still face the more straightforward obstacle of the

5    evidence's inadmissibility. "In Arizona, courts limit reliance on circumstantial evidence to

6    prove a defect to situations where the product in question is unavailable or otherwise

7    incapable of inspection." *Peralta v. Worthington Indus. Inc.*, No. CV-17-03195-PHX-JJT,

8    2022 WL 124760, at *5 (D. Ariz. Jan. 13, 2022), *aff'd*, No. 22-15140, 2024 WL 287774

9    (9th Cir. Jan. 25, 2024). Plaintiff does not dispute that Mr. Vizcarra's truck was both

10   available for inspection and actually inspected following the accident. Plaintiff therefore

11   cannot rely on circumstantial evidence regarding the truck's alleged defects.

12   　　　　In an attempt to get around this evidentiary bar, Plaintiff has submitted two expert

13   opinions that Mr. Vizcarra's truck was marred by a defect in the computer system

14   controlling the truck's gear-shift mechanism. (MSJ Response at 15–16.) Both expert

15   opinions are based entirely on circumstantial evidence, namely the fact of the alleged loss

16   of power coupled with the absence of any evidence indicating a mechanical failure. One

17   expert states that his assessment of a computer defect is based on nothing more than the

18   "process of elimination," and the other expert identifies the computer defect as an

19   "unknown transmission/clutch electronic-control failure." (MSJ Response at 15–16.)

20   Neither expert provided any opinion whatsoever as to the nature of this alleged computer

21   defect. Thus, Plaintiff's two experts base their opinions on the same circumstantial

22   evidence that Plaintiff attempted to use to permit the inference of a product defect. That is

23   impermissible. Experts, too, are limited in their reliance upon circumstantial evidence to

24   situations in which the relevant product has been destroyed or is otherwise unavailable. *See*

25   *Cross v. Empressive Candles LLC*, No. CV-20-00423-TUC-RM (MSA), 2022 WL

26   2437765, at *4 (D. Ariz. July 5, 2022), *report and recommendation adopted*, No. CV-20-

27

28

1    00423-TUC-RM (MSA), 2022 WL 3027996 (D. Ariz. Aug. 1, 2022). Therefore, Plaintiff's

2    expert testimony is no more admissible than the circumstantial evidence undergirding it.[4]

3           Because the evidence submitted by Plaintiff is both non-probative and inadmissible,

4    Plaintiff has failed to create a genuine dispute of material fact. Plaintiff cannot show that

5    Mr. Vizcarra's truck was defective, whether in manufacture or design, at the time it left

6    Defendant's control. Therefore, Defendant is entitled to judgment as a matter of law on

7    Plaintiff's claim of strict products liability.

8                          **2.    Negligence**

9           Defendant cites *Golonka* for the proposition that "if plaintiff cannot prove his design

10   defect case in strict liability he cannot prove it in negligence because negligence claim [sic]

11   required him to prove elements of strict liability theory plus that defendant knew or should

12   have known product unreasonably dangerous [sic]." 204 Ariz. at 583 ¶ 22 (citing *Gomulka*,

13   155 Ariz. at 243); (MSJ at 11). Although that statement from *Golonka* was predicated in

14   part upon an application of the risk/benefit test, it nevertheless applies here because

15   Plaintiff has adduced no competent evidence of a defect. Without a *prima facie* showing

16   that Defendant's product was unreasonably dangerous, there cannot possibly be liability

17   under Plaintiff's theories of negligence or wrongful death. Moreover, in responding to

18   Defendant's MSJ, Plaintiff did not devote a word to defending her claims of negligence

19   and wrongful death. Although the Court would not deem such an omission to be a

20   concession if Plaintiff's claims appeared to be viable, here the claims are not viable.

21   Defendant is therefore entitled to judgment as a matter of law on all of Plaintiff's claims.

22                  **C.    Conclusion**

23          Plaintiff's final argument is that Defendant's non-cooperation at a July 12

24   deposition precludes the Court from entering summary judgment in Defendant's favor.

25   Upon cursory review, this argument lacks merit. In any event, because Plaintiff failed to

26

27          [4] In attacking Plaintiff's computer-failure theory as speculative and conjectural,
     Defendant offers an equally speculative theory that Mr. Vizcarra's truck slowed down due
28   to an unknown defect in the trailers attached to it. (MSJ at 7–12.) In rejecting Plaintiff's
     evidence as insufficient, the Court by no means credits Defendant's unsubstantiated
     hypothesis.

comply with the discovery-dispute procedures set forth in the Court's scheduling order, (*see* Doc. 37 at 3), the Court will not entertain Plaintiff's argument.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion to Withdraw Admissions. (Doc. 104.)

**IT IS FURTHER ORDERED** granting Defendant's Motion for Summary Judgment. (Doc. 86.)

**IT IS FURTHER ORDERED** that each party shall bear its costs and fees with respect to both Motions.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant Daimler Truck North America LLC and terminate its involvement in this matter. The case remains open as to Plaintiff's claims against the other defendants.

Dated this 22nd day of October, 2024.

Honorable John J. Tuchi
United States District Judge