**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Jauregui, | No. CV-23-00729-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Daimler Truck North America LLC, *et al.*, | |
| Defendants. | |

At issue is Defendant PACCAR Incorporated's (Paccar) motion to exclude the testimony of Dr. David Orlowski (Doc. 136, Motion), to which Defendant Bendix Commercial Vehicle Systems LLC (Bendix) filed a notice of joinder (Doc. 148), Plaintiff Sandra Jauregui filed a response (Doc. 161, Response), and Paccar filed a reply (Doc. 172, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Paccar's motion in part and denies it in part.

**I.    Brief Factual Background**

This case arises out of a tragic highway collision in which Plaintiff's late husband, Mr. Jauregui, drove a big-rig truck into another big-rig truck that had stalled and come to a complete standstill on the Interstate 17. Mr. Jauregui, who perished in the accident, was driving a 2022 Peterbilt Conventional 579 tractor-trailer manufactured by Paccar. Mr. Jauregui's truck was equipped with a product manufactured by Bendix known as the Wingman Fusion, which is an Advanced Driver Assistance System designed to assist

drivers with the avoidance of roadway hazards, including stationary objects present in traffic lanes. Plaintiff asserts that a defect in Bendix's collision avoidance system, and/or a defect in the Peterbilt truck's integration of Bendix's technology, proximately caused the collision that killed Mr. Jauregui.

Plaintiff is Mr. Jauregui's widow, and she has brought suit against Defendants on behalf of herself and Mr. Jauregui's other statutory beneficiaries. Plaintiff retained Dr. David Orlowski to furnish expert testimony regarding the economic damages incurred by Mr. Jauregui's family as a result of his premature passing. Dr. Orlowski has provided monetary valuations of Plaintiff's damages relating to (1) loss of earning capacity, (2) loss of social security benefits, and (3) loss of household services. (Doc. 136-1 at 18.) Dr. Orlowski also described a fourth category of economic damages known as "loss of companionship," but he did not arrive at a numerical valuation thereof. (Doc. 136-1 at 16–18.) Defendants argue that various portions of Dr. Orlowski's opinion are unreliable and/or beyond his expertise and that his testimony must therefore be excluded.

**II.    Legal Standard**

Under Federal Rule of Evidence 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

### III. Discussion

Defendants separate their motion into two sections, one attacking Dr. Orlowski's "economic opinion" and the other attacking his loss-of-companionship opinion. This is somewhat of a false dichotomy, as Dr. Orlowski presents loss of companionship as a form of economic damages. (*See* Doc. 136-1 at 17.) Nevertheless, the Court adopts Defendants' organizational structure and assesses each of Defendants' arguments in turn, beginning with their argument that Dr. Orlowski's economic opinions are unreliable.

#### A. Dr. Orlowski's Economic Opinions

Defendants' core contention is that Dr. Orlowski's economic testimony is unreliable because he estimated Mr. Jauregui's future income based entirely upon Plaintiff's unverified and unverifiable verbal description of her late husband's past income. The Court agrees with respect to Dr. Orlowski's opinion regarding loss of earning capacity but disagrees with respect to his opinions regarding loss of social security benefits and loss of household services.

##### 1. Dr. Orlowski's Opinion Regarding Loss of Earning Capacity

Dr. Orlowski employed an exceptionally uncomplicated methodology to arrive at an estimate of Mr. Jauregui's lost earning capacity. In brief, Dr. Orlowski took Mr. Jauregui's income from the approximately four and a half months of 2022 during which he was alive and extrapolated it forward to retirement. (Doc. 136-1 at 2, 8, Attachs.

A–B.) Dr. Orlowski neither discussed nor applied any income adjustments of any kind, such as promotions, demotions, raises, pay cuts, business fluctuations, etc.

Plaintiff has failed to establish by a preponderance of the evidence that Dr. Orlowski's calculation of Mr. Jauregui's lost earning capacity is the product of reliable principles and methods. To begin with, Dr. Orlowski does not explain why he estimated Mr. Jauregui's lifetime earning potential based solely upon his income from the roughly four and a half months preceding his death. The arbitrariness of that methodology becomes clear if one imagines that Mr. Jauregui had died in, for instance, mid-February instead of mid-May. It would surely be methodologically unsound to estimate a person's lifetime earning capacity based upon a few weeks of income, as opposed to some other benchmark, such as the income generated in the rolling year preceding the person's death. The unreliability of Dr. Orlowski's methodology is especially clear when one considers Mr. Jauregui's sources of income beyond his base salary. Despite extrapolating forward Mr. Jauregui's income from overtime pay, unused paid time off (PTO), and unused sick leave, (*see* Motion at 9), Dr. Orlowski offers no explanation of any kind as to how a four-and-a-half-month sample constitutes an adequate proxy for Mr. Jauregui's working habits generally. Defendants question why Dr. Orlowski assumed that Mr. Jauregui would continue to receive overtime routes at the same rate he did in the first four and a half months of 2022, as well as why Dr. Orlowski assumed that Mr. Jauregui would continue to use PTO and sick leave at the same rate as in the first four and a half months of 2022. (*See* Motion at 9; Reply at 7.) These issues are not discussed in Dr. Orlowski's report, but he later clarified in a deposition that his conclusions are based entirely upon informal google searches that he could not describe with any particularity and upon Plaintiff's mere say-so. (*See* Doc. 172-5 at 99–125.) That explanation is insufficient.

Of course, it *might* be perfectly appropriate to utilize only a few months' data in generating an estimate of lifetime earning capacity; the Court is in no position to definitively say that such an approach is illegitimate. But, absent some explanation of his report's basis and reasoning, the Court cannot hold that Dr. Orlowski's use of a truncated

1  dataset is scientifically defensible. The Court therefore agrees with Defendants that
2  Dr. Orlowski's reliance on less than five months of data is, absent a justification,
3  unreliable. (*See* Motion at 8.)

4        The foregoing analysis goes to the absence of reliability, but there are similar
5  problems with Dr. Orlowski's report that give rise to the presence of affirmative
6  unreliability. As noted, in extrapolating forward Mr. Jauregui's income from the portion of
7  2022 during which he was alive, Dr. Orlowski included in the multiplication operation
8  certain compensation that Mr. Jauregui had received for unused PTO and sick leave.
9  However, Dr. Orlowski may have erred in including such unused PTO and sick leave in
10 his income annualization calculation. (*See* Motion at 9.) If unused PTO and sick leave are
11 paid out in a lump sum at the end of each calendar year, then Mr. Jauregui's income for the
12 fraction of 2022 during which he was alive would already reflect an entire year's worth of
13 compensated PTO and sick leave, and it would therefore be necessary to omit such income
14 from the annualization function, lest it be double- or triple-counted. Dr. Orlowski
15 acknowledges that he has essentially no idea how Shamrock Farms administers PTO and
16 sick leave. (*See* Doc. 172-5 at 116–25 ("**Q.** What -- what do you have to show that that
17 PTO and sick time payout was from 2022 and not rolled over from previous years; do you
18 know? **A.** I do not know.").) Dr. Orlowski admitted to basing his suppositions regarding
19 overtime, PTO, and sick leave, none of which are mentioned in his report, upon an informal
20 internet search and verbal statements made by Plaintiff, both of which are also not
21 described in his report. (*See* Doc. 172-5 at 116–25.) Dr. Orlowski's estimation of lost
22 earning capacity is therefore unreliable. Plaintiff has not carried her burden of establishing
23 by a preponderance of the evidence that Dr. Orlowski's expert opinion is the product of
24 reliable methods applies to appropriate data.

25       Plaintiff's response is unpersuasive. Despite Defendants' full-page discussion of the
26 flaws in Dr. Orlowski's methodology regarding PTO and sick leave, (*see* Motion at 9),
27 Plaintiff declines to address the issue and instead inaccurately states that the parties' sole
28 dispute on this subject concerns overtime pay, (*see* Response at 6). That omission alone is

fatal to Plaintiff's argument. But even if Plaintiff were correct that Dr. Orlowski's treatment of overtime pay presented the sole reliability issue, Plaintiff's defense of Dr. Orlowski's extrapolation thereof is still unavailing. Rather than explain how Dr. Orlowski determined that a four-and-a-half-month period was a suitable basis for a projection of lifetime earnings, Plaintiff simply asserts that it is. Plaintiff quotes a statement from Dr. Orlowski's rebuttal report that "[i]f Mr. Jauregui was needed for such overtime prior to his death in January [sic], 2022, and that on the heels of Covid, then it is vocationally probable that this trend would have continued long-term," (Response at 6), but that statement is completely unsupported by any facts, citations, data, or reasoning, (*see* Doc. 161-4 at 2.) An expert's unreliable conclusion is not made reliable simply by paraphrasing it. The Court expresses no opinion as to whether Dr. Orlowski's conclusions are correct or incorrect, but the Court must exclude expert testimony where, as here, such testimony is not reliable.

**2.     Dr. Orlowski's Opinion Regarding Loss of Social Security Benefits**

Defendants challenge Dr. Orlowski's valuation of Plaintiff's lost social security benefits on narrower grounds. Plaintiff's loss of social security benefits results from her not being able to receive her own benefits, given that she will now receive her late husband's higher benefits under the relevant social security regulations. Whereas, if Mr. Jauregui were still alive, he would receive his benefits and Plaintiff would receive her own benefits, thereby permitting the marital estate to receive both benefits. (*See* Doc. 136-1 at 10–11.) However, had Mr. Jauregui survived, Plaintiff would have needed to return to the workforce for approximately three years in order to become eligible for her own benefits. (*See* Doc. 172-5 at 133–36.) Although he declined to discuss any of this in his report, Dr. Orlowski later clarified via deposition testimony that his determination of Plaintiff's benefits eligibility was based on her verbal statement to him that she intended to return to the workforce upon her children's leaving the nest. (*See* Doc. 172-5 at 134.) Defendants argue that Dr. Orlowski's opinion is unreliable because he did not mention

1  Plaintiff's statement in his report and because he has since destroyed his notes of his verbal
2  conversation with Plaintiff. The Court disagrees.

3  Although Dr. Orlowski omitted from his report Plaintiff's intention to return to the
4  workforce, he did state that his opinions were based upon his conversation with Plaintiff.
5  (*See* Doc. 136-1 at 1.) Indeed, Defendants are well aware that the majority of
6  Dr. Orlowski's report is based upon Plaintiff's verbal statements, as Defendants repeatedly
7  use that fact as a cudgel in their critique of other portions of Dr. Orlowski's opinion. The
8  Court is receptive to Defendants' general contention that an expert must disclose the basis
9  upon which his opinion rests, but Defendants' position in the instant case elevates form
10 over function. The basis of Dr. Orlowski's opinion is clear, even if the text of his report
11 requires its reader to look between the lines. Any opacity that exists as a result of
12 Dr. Orlowski's omission is *de minimis* and has been ameliorated by his clarification that
13 he relied on Plaintiff's statement that she intended to return to the workforce. Although
14 Plaintiff's verbal statements are not a reliable basis upon which to draw conclusions
15 relating to her late husband's employer's policies concerning overtime, PTO, and sick
16 leave, Plaintiff's verbal statement is a reliable basis upon which to formulate an opinion
17 about her own subjective intent to reenter the workforce. Indeed, Defendants do not
18 indicate what other source of information Dr. Orlowski could possibly have relied upon in
19 concluding that Plaintiff intended to resume working in the future. The Court therefore
20 finds Dr. Orlowski's opinion reliable insofar as it pertains to Plaintiff's lost social security
21 benefits.

22 The fact that Dr. Orlowski has disposed of his notes does not alter that conclusion.
23 Defendants state that "[w]ithout the notes, cross-examination or counter-presentation of
24 other evidence is severely hampered." (Reply at 4.) That is simply not true. Defendants can
25 test Plaintiff's professed intent to return to the workforce during cross-examination.
26 Dr. Orlowski may therefore testify as to Plaintiff's loss of social security benefits.
27 . . .
28 . . .

### 3. Dr. Orlowski's Opinion Regarding Loss of Household Services

Defendants do not challenge the admissibility of this portion of Dr. Orlowski's report. Dr. Orlowski may therefore testify thereto.

### B. Dr. Orlowski's Opinion Regarding Loss of Companionship

Despite not providing a monetary valuation of Plaintiff's loss of companionship, Dr. Orlowski still describes this category of Plaintiff's damages in his expert report. Dr. Orlowski first defines companionship, based upon certain scholarly publications, as "simply [] the presence of another person during one's daily activities." (Doc. 136-1 at 13.) He then dedicates three pages to recounting Plaintiff's statement about the nature of her and Mr. Jauregui's relationship. Next, he quotes the Supreme Court of New Jersey for the proposition that loss of companionship is a form of economic harm that is distinct from loss of consortium. "It must be the kind of advice, guidance and counsel that could be purchased from a business advisor, a therapist, or a trained counselor, for instance. That some of us obtain the same benefit without change [sic] from spouses, friends, or child [sic] does not strip it of pecuniary value." (Doc. 136 at 16 (quoting *Green v. Bittner*, 85 N.J. 1, 14 (1980)).) In his own words, Dr. Orlowski then explains that "[c]ompanionship is distinguished from consortium in that people are able to hire paid 'companions' through a personal companion registry. These individuals accompany a person while shopping, help provide transportation, or generally talking [sic] and interact in helpful ways." (Doc. 136-1 at 16.) Finally, although he expressly declines to "place an actual value on this loss area," Dr. Orlowski does note that "[t]hese services are routinely provided through licensed agencies in greater Phoenix, and cost approximately $25 to $30 per hour, depending on the duration of the scheduled visit." (Doc. 136-1 at 17.)

Defendants first argue that Dr. Orlowski is unqualified to opine on the value of lost companionship because "his specialty is vocational rehabilitation, not relationship counseling." (*See* Motion at 4.) Defendants appear to not fully apprehend the substance of Dr. Orlowski's expert opinion. Contrary to Defendants' assertions, Dr. Orlowski's report does not provide "relationship counseling" or attempt to "assess[] personal relationships,"

- 8 -

and he does not purport to possess the expertise necessary to value the intangible, non-economic components of a relationship. In fact, the opposite is true. His report makes clear that loss of companionship is an economic harm that can be quantified based upon reference to the geographically relevant market for paid companions. That numerical assessment falls within Dr. Orlowski's expertise.

Defendants next argue that Dr. Orlowski's opinion is unreliable because it constitutes a mere trojan horse for Plaintiff's unsworn statements about her relationship. According to Defendants, "[a]t bottom, Dr. Orlowski's 'method' is just *ipse dixit* from someone else's mouth: Mr. Jauregui provided intangible things to others because Plaintiff says he did." (Motion at 6; *see also* Motion at 6 ("Dr. Orlowski is really just parroting unsworn statements of Plaintiff").) The Court rejects this argument for two reasons. First, Defendants' contention that Dr. Orlowski's report belies a coherent methodology overlooks the fact that Dr. Orlowski openly declares that he is not attempting to value Plaintiff's loss of companionship. His recitation of Plaintiff's statement is *not* presented as a basis of valuation, but is instead presented as background information to assist in the explanation of what loss of companionship consists of. Dr. Orlowski's report explains that loss of companionship must be valued according to a comparative assessment involving the economic market for companionship, not on the intangible grounds that underlie loss of consortium. Thus, Dr. Orlowski is not parroting Plaintiff in the manner that Defendants assert. Second, even if Dr. Orlowski were to ground his opinion in Plaintiff's description of her relationship with her late husband in the manner described by Defendants, the Court would not perceive a reliability issue therewith. Notably, Defendants posit no alternative source of data from which an expert could glean the day-to-day details of marital companionship. Defendants contend that "Plaintiff, however, may testify at trial—under oath and with the benefit of cross-examination." (Motion at 6.) True as that statement may be, it does not follow therefrom that an expert is disallowed from relying upon a widow's description of the companionship that she has lost.

. . .

Thus, the Court concludes that Dr. Orlowski's expert opinion, such as it is, is reliable. But, although Dr. Orlowski's quotation of Plaintiff's description of her relationship with Mr. Jauregui is not impermissible, it is of limited utility, given that it does not form the basis of any ultimate conclusion. Nevertheless, the Court finds that Dr. Orlowski's opinion is helpful enough to pass muster. Insofar as loss of companionship is a distinct form of damages, his report is likely to assist the jury in understanding what loss of companionship is and what it is not. Additionally, the Court finds that the jury will benefit from a description of the market for paid companions, particularly as it exists in Phoenix. However, the Court will exclude all discussion of New Jersey caselaw. If either party wants to argue that loss of companionship is or is not recognized as a source of economic damages under Arizona law, they may do so in a timely motion, not in an expert report discussing a single, extra-jurisdictional opinion from forty-five years ago. Any mention of another state's law will likely confuse the jury far more than educate it. Thus, with the exception of his construction of New Jersey caselaw, Dr. Orlowski may testify as to Plaintiff's loss of companionship.

## IV.  Conclusion

Dr. Orlowski may present expert testimony regarding Plaintiff's loss of social security benefits, loss of household services, and loss of companionship, as described above. However, the Court finds Dr. Orlowski's opinion to be unreliable insofar as it concerns loss of earning capacity. The Court therefore excludes that portion of Dr. Orlowski's expert testimony.

**IT IS THEREFORE ORDERED** granting in part and denying in part Paccar's motion to exclude the expert testimony of Dr. David Orlowski (Doc. 136).

Dated this 25th day of March, 2025.

Honorable John J. Tuchi
United States District Judge